IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | No. 16-3019-01-CR-S-MDH |
|---|---|
| Plaintiff, | **COUNT 1:**<br>18 U.S.C. § 1347<br>NMT 10 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony |
| v. | |
| JAMES R. DYE,<br>[DOB: 12/02/1949] | |
| Defendant. | **FORFEITURE ALLEGATION**<br>18 U.S.C. § 982(a)(7)<br><br>Mandatory Restitution<br>$100 Special Assessment |

# INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

At all times material to this Information,

## Introduction

1. Defendant **JAMES R. DYE** ("Dye") was, variously, a resident of Springfield, Missouri, and Independence, Missouri. Dye was a dentist, with a dental license under Missouri law. He listed his address with the Missouri Division of Professional Registration as: All About Smiles, 1717 E. Cherokee, Suite 104, Springfield, Missouri.

2. Co-conspirator #1 and co-conspirator #2 were the sole owners of All About Smiles, LC ("All About Smiles"), a Missouri limited liability company in the business of providing dental services, which had as its primary place of business, 1717 E. Cherokee, Suite 104, Springfield, Missouri, which was located in Greene County, within the Western District of Missouri.

3. Co-conspirators #1 and #2 acquired ownership of the All About Smiles dental clinics in June, 2012, by purchasing the assets of the former Affordable Dental Group, Inc.

1

("Affordable Dental Group"). Affordable Dental Group was a dental practice owned by "A.R.," a dentist, which operated from 2009 through 2012, and had clinics in Springfield, Mountain Grove, Licking, and Bolivar, all in Missouri. Co-conspirator #1 had worked at Affordable Dental Group since 2010, and was the company's office manager. Variously, co-conspirator #1's position was listed as "General Manager" and "Chief of Staff." As office manager, co-conspirator #1 had access to the Affordable Dental Group bank accounts, was responsible for paying payroll taxes, hired and terminated staff, and billed claims to health care benefit programs. Co-conspirator #1 hired co-conspirator #2 to perform maintenance, and James Dye, a dentist, to work at the Affordable Dental Group clinics.

4. In early 2012, the Internal Revenue Service ("IRS") sent notices to Affordable Dental Group regarding its intent to seize the business's assets to satisfy an outstanding tax debt. On or about May 24, 2012, co-conspirator #2 filed articles of organization for All About Smiles LC (Certificate of Organization No. LC1230193) with the Missouri Secretary of State, with co-conspirator #2 listed as the organizer. In June 2012, co-conspirators #1 and #2, through their company PL Family Management Company LC, paid the IRS $20,000 to purchase the equipment of Affordable Dental Group. Co-conspirators #1 and #2 began operating the former Affordable Dental Group clinics under the name All About Smiles.

5. As owners of All About Smiles, co-conspirators #1 and #2 received revenues generated by All About Smiles, which continued to operate clinics at the locations previously utilized by the Affordable Dental Group in Springfield, Mountain Grove, and Bolivar, Missouri. However, co-conspirators #1 and #2 subsequently closed the dental clinics in Bolivar and Mountain Grove. Most recently, All About Smiles operated a dental clinic in Springfield, Missouri located at 1717 E. Cherokee, Suite 104.

2

6. Co-conspirator #1 was the general manager of All About Smiles' dental clinics at all locations, and had control over operations. Co-conspirator #1 directed staff on a daily basis, hired and terminated staff, supervised the submission of claims to Medicaid and insurance companies, directed staff on patient scheduling, and oversaw the office practitioners.

7. Co-conspirator #2 worked at the All About Smiles dental clinics in various capacities. Co-conspirator #2 was in charge of the All About Smiles bank accounts, signed checks on behalf of All About Smiles, and performed maintenance work at the clinics.

8. Dye derived his income from working at the All About Smiles dental clinics located at 1717 E. Cherokee, Suite 104, Springfield, Missouri, and 921 Main Street, Suite A, Mountain Grove, Missouri, and was the nominal owner of the dental records and practices located at those addresses. Dye claimed to lease the building, equipment, and support personnel from All About Smiles, and that All About Smiles acted as his billing agent.

9. All About Smiles paid for the services of other dentists to work at its clinics, including "B.H." and "B.T." "B.H." performed most of her work at the All About Smiles dental clinic located in Mountain Grove, Missouri.

### Medicaid Rules For Orthodontic Services

10. Medicaid was a health care benefit program under federal law. In the State of Missouri, the Medicaid program was known as "MO HealthNet," but is referred to herein as "Medicaid." Medicaid paid providers for services provided to eligible low income or disabled beneficiaries. Medicaid was jointly funded by the State of Missouri and the federal government, and administered by the Missouri Department of Social Services.

3

11. Medicaid provided dental service benefits for, among others, eligible children.

12. A dentist was required to obtain a Medicaid provider number before he or she could submit claims for payment to Medicaid.

13. Dye had a Medicaid provider number from June 1, 1976 to June 20, 1989, and again from June 8, 2010, through the date of this Information.

14. Dentists were required to agree in writing that they will comply with Medicaid rules to be paid from the program.

15. Providers were required to submit claims for dental services to Medicaid using codes known as Current Dental Terminology ("CDT") codes. The use of CDT codes promoted uniformity and specificity in accurately reporting dental treatment and allowed for efficient processing of dental claims.

16. Dye submitted, and caused to be submitted, claims for payment to Medicaid for dental services provided to Medicaid beneficiaries, using the Medicaid provider numbers of at least four dentists, including Dye. The funds paid by Medicaid for claims under these provider numbers were electronically transmitted to bank accounts controlled by co-conspirators #1 and #2.

17. Medicaid required providers to obtain prior authorization, or "precertification," for any orthodontic services. Providers' requests to provide orthodontic services were reviewed by a dentist/orthodontist employed by Medicaid. In order for orthodontic pediatric beneficiaries to receive orthodontic services, Medicaid rules and regulations required certain criteria to be met. Further, without precertification, providers could not obtain reimbursement from Medicaid for orthodontic services.

18. Ortho-Tain was an orthodontic appliance designed to straighten teeth, manufactured and marketed by the Ortho-Tain company, located at 950 Green Bay Road,

4

Winnetka, Illinois. According to the Ortho-Tain company's Internet website, the appliance "offer[ed] doctors and patients the most advanced treatment available [] to straighten teeth without braces." The Ortho-Tain company advised its customers, the dental services providers, that the Ortho-Tain orthodontic appliance was to be billed to insurers using orthodontic CDT codes.

19. The cost of the Ortho-Tain orthodontic appliance to dental services providers such as All About Smiles was approximately $50.

20. The Ortho-Tain orthodontic appliance was not a speech aid prosthesis. A speech aid prosthesis was a maxillofacial prosthetic used to replace a missing part of a patient's palate, or hole in the roof of the mouth, such as with a patient having a cleft palate. Medicaid did not require providers to obtain prior authorization, or "precertification," for speech aid prostheses provided to eligible beneficiaries. If a provider billed Medicaid for a speech aid prosthesis, Medicaid paid the provider the amount billed by the provider, up to a maximum allowed amount of $695. Speech aid prostheses were billed to Medicaid using CDT code D5952.

### The Scheme to Defraud Medicaid

21. Beginning on or about October 6, 2010, and continuing through at least August 19, 2015, in the Western District of Missouri, co-conspirator #1, co-conspirator #2, and **JAMES R. DYE** devised a scheme to defraud a health care benefit program, and to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by, or under the custody or control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services. As a part of this scheme, co-conspirator #1, co-conspirator #2, and Dye purchased orthodontic appliances for approximately $50 each, provide them to Medicaid pediatric beneficiaries, and billed each such appliance to Medicaid as speech aid prosthesis, pediatric, for approximately $695. The
5

substance of the scheme to defraud and to obtain money by means of false and fraudulent pretenses and representations, and the manner of its execution, were as set forth below, and involved their billing, and being paid by, Medicaid for speech aid prostheses that were, in fact, orthodontic appliances. The vast majority of the orthodontic appliances that co-conspirator #1, co-conspirator #2, and Dye billed as speech aid prostheses were Ortho-Tain orthodontic appliances, but they also billed other orthodontic appliances, such as retainers and thumb cages, as speech aid prostheses.

22. In furtherance of the scheme and in execution thereof, co-conspirator #1, co-conspirator #2, and Dye provided Medicaid pediatric beneficiaries with Ortho-Tain orthodontic appliances purchased for approximately $50 each. They submitted, and caused to be submitted, claims for payment for those appliances to Medicaid stating that they were speech aid prostheses. On those claims, they used CDT code D5952, which is the code for speech aid prosthesis, pediatric, in the Maxillofacial Prosthetics section of the CDT, seeking approximately $695 for each appliance. Medicaid electronically transferred payment into bank accounts controlled by co-conspirators #1 and #2 for appliances billed under CDT code D5952.

23. Co-conspirator #1, co-conspirator #2, and Dye knew the Ortho-Tain appliances should have been billed to Medicaid as orthodontic services. Also, they knew Medicaid did not cover orthodontic services unless the Medicaid program's requirements were met, and they received precertification, which required review by dentist/orthodontist employed by Medicaid. They decided to bill the Ortho-Tain appliances as speech aid prostheses in order to bypass the precertification requirement.

24. Dye prescribed the Ortho-Tain orthodontic appliance to Medicaid pediatric beneficiaries, causing claims to be submitted to Medicaid to pay for those appliances. Dye told

6

Medicaid pediatric beneficiaries and their families that the Ortho-Tain orthodontic appliance would straighten teeth, and caused the internal medical records of Medicaid pediatric beneficiaries maintained at All About Smiles to document that the reason Dye prescribed Ortho-Tain orthodontic appliances was to straighten teeth.

25. Co-conspirator #1 implemented the billing protocol to use CDT code D5952 for orthodontic appliances provided to patients.

26. Co-conspirator #2 controlled the funds obtained from the fraudulent submission of claims to Medicaid for the orthodontic appliances.

27. Co-conspirator #1, co-conspirator #2, and Dye knew their representations that the orthodontic appliances were speech aid prostheses that could be properly billed under CDT D5952, were untrue when they made them.

28. Had officials administering Medicaid known co-conspirator #1, co-conspirator #2, and Dyne submitted, and caused to be submitted, claims for payment for orthodontic appliances that were represented to be speech aid prostheses, Medicaid would not have paid those claims.

7

## COUNT ONE
(Health Care Fraud)

29. The factual allegations contained in Paragraphs One through Twenty-Eight (1-28) of this Information are hereby incorporated as though fully set forth.

30. Beginning on or about October 6, 2010, and continuing through on or about August 19, 2015, in the Western District of Missouri, the defendant, **JAMES R. DYE,** aiding and abetting others, and being aided and abetted by others, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by, and under the custody or control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, by submitting and causing to be submitted, approximately 241 claims submitted under CDT D5952, speech aid prosthesis, through Affordable Dental Group and All About Smiles clinics, in the total approximate amount of $167,090, as set forth below:

| Provider Number | Performing Provider | CDT Code | Units | Amount Billed to And Paid by Medicaid |
|---|---|---|---|---|
| 400774105 | Dye, James | D5952 | 218 | $151,105.00 |
| 402954804 | B.H. | D5952 | 21 | $14,595.00 |
| 400035531 | A.R. | D5952 | 1 | $695.00 |
| 404946600 | B.T. | D5952 | 1 | $695.00 |
| Total | | | | $167,090.00 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

8

# FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(7))

31. Upon conviction of the offense alleged in Count One of this Information, Dye shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to violations of 18U.S.C. §§ 1347 and 2, including but not limited to: U.S. Currency in the amount of at least $167,090.00.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of Dye up to the value of the forfeitable property described above.

TAMMY DICKINSON
United States Attorney

By: *[signature]*
STEVEN M. MOHLHENRICH
Assistant United States Attorney

LUCINDA S. WOOLERY
Assistant United States Attorney

DATED: 2/11/16
Springfield, Missouri

9